# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATTHEW JAMES HORNER, | * | |
| Petitioner, | * | |
| v. | * | CIVIL NO. JKB-12-2582 |
| WARDEN BOBBY P. SHEARIN, *et al.*, | * | |
| Respondents. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

On February 5, 2020, this Court granted Petitioner Matthew Horner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (2/5/20 Order, ECF No. 151.) In its analysis, the Court concluded Horner was entitled to the writ because during his trial, his constitutional rights under *Patton v. United States*, 281 U.S. 276 (1930) and *Brady v. Maryland*, 373 U.S. 83 (1963) had been violated. (Mem. Op. at 40, ECF No. 150.) The Court directed Respondents ("the State") to release Horner by April 5, 2020 unless the United States Court of Appeals for the Fourth Circuit granted a superseding stay of execution or the State elected to retry Horner and obtained from Maryland state courts a decision denying him bail and/or release pending retrial. (2/5/20 Order.)

Three weeks later, on February 26, 2020, the State filed a motion to alter or amend the judgment (Mot. Amend, ECF No. 154), a motion to stay the judgment pending appeal (Mot. Stay, ECF No. 153), and a motion to substitute the public officer respondent (Mot. Substitute, ECF No. 152). Two and a half weeks later, on March 15, 2020, the State also filed a motion to include Horner's sentencing transcript in the record for its stay motion. (Mot. Include Tr., ECF No. 159.)

Before the Court could rule on these motions, the State filed a notice of appeal on March 27, 2020.[1] (Not. Appeal, ECF No. 162.) Because the deadline by which the State was required to comply with the Court's order was approaching and the Court was uncertain as to the scope of its jurisdiction in light of the notice of appeal, the Court extended the deadline by which the State was required to comply with the Court's order by an additional 60 days. (4/1/20 Order, ECF No. 166.) The State then moved to withdraw without prejudice its motion before the Fourth Circuit, which the Fourth Circuit granted. (4CA ECF Nos. 7, 8, U.S.C.A. Case No. 20-6426.) The Court now addresses the State's four pending motions.

The Court will deny the State's motion to alter or amend the judgment, grant the motion to include Horner's sentencing transcript, deny the motion to stay the judgment, and grant the motion to substitute the public officer respondent.

## I. Motion to Alter or Amend

The State makes two requests in its motion to amend. First, it asks the Court to decide Horner's claims under *Strickland v. Washington*, 466 U.S. 668 (1984), which the Court declined to do in its prior opinion. (Mot. Amend at 3–4.) Second, it asks the Court to strike the third and fourth numbered paragraphs in its order granting Horner a writ of habeas corpus; the State contends the instructions contained in these two paragraphs exceed the bounds of the Court's authority. (*Id.* at 4–5.) Horner opposes the motion. (Opp'n Mot. Amend, ECF No. 155.)

### A. The Strickland Claims

In its February 5, 2020 decision, the Court declined to consider Horner's *Strickland* claims on the merits and instead denied the claims without prejudice. (Mem. Op. at 39.) The Court's

---

[1] The notice of appeal stated that the appeal was "from the order entered on February 5, 2020, conditionally granting a writ of habeas corpus to Petitioner." (Not. Appeal at 1, ECF No. 162.) It was not until several days later when the State's filings were posted on the Fourth Circuit's docket that it became apparent the State was seeking an emergency stay of the Court's judgment. (4CA ECF No. 1, U.S.C.A. Case No. 20-6426.)

reasoning was that it was not necessary to analyze the *Strickland* claims because the Court had already concluded that Horner was entitled to relief under both *Patton* and *Brady*. (*Id*.) The State contends this was clear error because the denial of the *Strickland* claims without prejudice raised "a substantial question [as to] whether the Court's February 5, 2020 order [was] a final judgment, and therefore appealable." (Mot. Amend at 3.) The State further argues that even if declining to address the *Strickland* claims on the merits was not a clear error of law, it did result in "a manifest injustice" that should be remedied by the Court now ruling on those claims. (*Id*. at 13.)

First, it was not clear error for the Court to decline to rule on Horner's *Strickland* claims: the Court's order granting the writ of habeas corpus was a final appealable order regardless of whether the Court addressed the *Strickland* claims on the merits. The parties heavily dispute whether the Fourth Circuit's decision in *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007) authorized the approach the Court took here or whether the Fourth Circuit has been silent on this issue. (*See* Opp'n Mot. Amend at 4–6; Reply Mot. Amend at 3–6, ECF No. 158.) But even if the Fourth Circuit has not directly addressed this issue, as the State contends, other circuits overwhelmingly have sanctioned the approach the Court took here. As Horner points out, the First, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all held that "[a]n order granting a petition for a writ of habeas corpus is ordinarily considered a final judgment, even if the district court does not address all of the petitioner's claims." *Sprosty v. Buchler*, 79 F.3d 635, 645 (7th Cir. 1996); *accord Burks v. Kelley*, 881 F.3d 663, 666 (8th Cir. 2018); *Swanson v. DeSantis*, 606 F.3d 829, 833 (6th Cir. 2010); *Foxworth v. Maloney*, 515 F.3d 1, 3 (1st Cir. 2008); *Blazak v. Ricketts*, 971 F.2d 1408, 1410–12 (9th Cir. 1992) (per curiam); *Washington v. Champion*, 52 F.3d 339, at *1 (10th Cir. 1995) (unpublished); *Young v. Herring*, 777 F.2d 198, 202 (5th Cir. 1985); *Blake v. Kemp*, 758 F.2d 523, 525 (11th Cir. 1985). The State concedes this line of authority

exists but contends there is a "circuit split" and cites two cases that it alleges stand for the opposite proposition: *Broussard v. Lippman*, 643 F.2d 1131 (5th Cir. 1981) and *Stewart v. Bishop*, 403 F.2d 674 (8th Cir. 1968). (Mot. Stay at 10.) Neither of these cases is on point, however, as the reason the orders in these cases were not final was because the district courts did not actually take the final step of granting habeas relief, which the Court did do here. Consistent with the clear authority on point, the Court concludes it was not clear error to decline to rule on Horner's *Strickland* claims after concluding Horner was entitled to the writ on two other grounds.

As for whether the Court's decision not to address the *Strickland* claims resulted in a "manifest injustice," even if was not a clear error of law, the Court again agrees with Horner. The State is correct that some courts have said it is best practices for a district court to address every claim in a habeas petition to avoid the potential for piecemeal litigation. *See Clisby v. Jones*, 960 F.2d 925, 938 (11th Cir. 1992). But the Court believes piecemeal litigation is unlikely here. The Court has already concluded that Horner is entitled to relief for two independent reasons. Given the facts in this case, the Court believes reversal on either ground is unlikely, but reversal on both grounds even more so. And even in the unlikely event the Court is reversed on both grounds, it sees no basis for concluding the State would be subject to a "manifest injustice" if it had to participate in further litigation related to the *Strickland* claims.

In sum, it was not "clear error" or a "manifest injustice" for the Court not to rule on Horner's *Strickland* claims. It declines to amend its judgment by ruling on those claims now.

### B. The Third and Fourth Paragraphs of the Court's Order

In the Court's February 5, 2020 order, the Court took several actions, including: granting Horner's petition for a writ of habeas corpus (paragraph two), vacating Horner's conviction and sentence (paragraph three), and stating that within 60 days, "the State shall afford Matthew James

4

Horner the opportunity, after he has been fully and properly advised by counsel, to make an election as to whether to have a jury trial or a court trial for the charges against him" (paragraph four). (2/5/20 Order.)

The State contends that the Court's instructions in paragraphs three and four were too prescriptive and violated principles of federalism. (Mot. Amend at 14–18.) The State asserts this amounted to a clear error of law and asks the Court to strike paragraphs three and four from the order. (*Id.* at 18.)

The Court will not strike these paragraphs. The State's general description of the law is correct: in the habeas context, principles of federalism are implicated, and the extent to which a federal district court can prescribe actions that should be taken by a state court is limited. *See Fay v. Noia*, 372 U.S. 391, 431 (1963), *overruled in part by Wainwright v. Sykes*, 433 U.S. 72 (1977) (A federal court "cannot revise the state court judgment; it can act only on the body of the petitioner.") For example, federal courts can exceed their authority if they attempt to commute a sentence, *see Duhamel v. Collins*, 955 F.2d 962, 968 (5th Cir. 1992), or order a state court to reinstate an appeal, *see Barry v. Brower*, 864 F.2d 294, 301 (3d Cir. 1988).

But the Court did not exceed its bounds here. The Fourth Circuit has repeatedly upheld orders from district courts that, as is the case here, vacate a conviction after granting a habeas petition. *See, e.g.*, *Wolfe v. Clarke*, 691 F.3d 410, 426 (4th Cir. 2012); *see also Woodall v. Pettibone*, 465 F.2d 49, 53 (4th Cir. 1972) (explaining that juveniles who had been unconstitutionally tried as adults in Maryland state courts had "a right to have their convictions vacated and declared null and void" by a federal district court). It has similarly upheld orders from district courts that, as is the case here, vacate a sentence after granting a habeas petition. *See, e.g.*, *Bennett v. Stirling*, 170 F. Supp. 3d 851, 855 (D.S.C.), *aff'd*, 842 F.3d 319 (4th Cir. 2016). Absent

any authority that the Court exceeded its power in vacating Horner's conviction and sentence, the Court will not strike paragraph three from the order.

The Court will not strike paragraph four from the order either.[2] This paragraph merely provides that the state court must correct the constitutional deficiency the Court identified: that is, the State, if it elects to retry Horner, must give him the opportunity to make an election as to whether to have a jury trial. (2/5/20 Order.) To the extent this statement was prescriptive, it was merely prescribing that retrial proceedings be carried out "in a way that comports with constitutional dictates." *See Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998). Such an approach is consistent with the boundaries of federalism. *See Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) ("[F]ederal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity *to correct the constitutional violation found by the court.*") (emphasis added).

In sum, the Court will not strike paragraphs three or four from the February 5, 2020 order. Because the Court also declines the State's request to adjudicate Horner's *Strickland* claims on the merits, it will deny the State's motion to amend.[3]

## II.     *Motion to Stay & Motion to Include Sentencing Transcript*

On February 26, 2020, the State moved to stay the Court's judgment pending appeal.[4] (Mot. Stay at 1.) In the motion, the State made several references to the transcript of Horner's sentencing. (*Id.* at 11–13.) Several weeks later, the State realized that the sentencing transcript it

---

[2]     In saying here that the Court will not strike paragraph four, the Court means that it will not strike the substance of this paragraph; the Court has already extended the deadline referenced in this paragraph in a separate order. (4/1/20 Order.)

[3]     The Court recognizes that the ongoing Covid-19 pandemic has significantly reduced operations in state and federal courts. The State has not indicated, however, that the challenges associated with the pandemic will make it impossible to comply with the timeline laid out in the Court's order. Unless the State indicates otherwise, the Court will continue to assume that the pandemic does not pose such a barrier.

[4]     The State had not yet filed an appeal at the time it filed the motion to stay but indicated that it would file an appeal after the Court addressed its motion to amend the judgment. (Mot. Stay at 2 n.2.)

had referenced was not in the record and moved to include it for the purpose of the stay motion. (Mot. Include Tr. at 2.) Horner opposes the motion to include the sentencing transcript (Opp'n Mot. Include Tr., ECF No. 164) and the motion to stay the judgment (Opp'n Mot. Stay, ECF No. 156).

The Court will consider the sentencing transcript. Under Habeas Rule 5(c), a respondent "must attach" to its answer to a petition "parts of the transcript that the respondent considers relevant." Rules Governing § 2254 Cases, Rule 5, 28 U.S.C.A. foll. § 2254. The parties agree that the State did not comply with this rule with respect to the sentencing transcript. But the text of the rule does not explicitly provide the consequences of violating it and neither party cites any authority that sheds light on this question.

Because the consequences of violating this rule are unclear, the Court will consider the transcript, but, consistent with the State's request, will only consider it with respect to the State's stay motion. Horner will not be prejudiced by this decision because, as explained below, the contents of the transcript will not ultimately affect the Court's decision with respect to the stay motion.

Having concluded the Court will consider the transcript, the Court now turns to the motion to stay itself. If a court grants a writ of habeas corpus and the government appeals, Federal Rule of Appellate Procedure 23(c) provides that "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must . . . be released" unless a court orders otherwise. There is, in other words, a "presumption" that when a court grants a writ of habeas corpus, the prisoner will be released. *Hilton*, 481 U.S. at 774.

This presumption, however, "can be overcome if the traditional factors regulating the issuance of a stay weigh in favor of granting a stay." *O'Brien v. O'Laughlin*, 557 U.S. 1301, 1302

(2009). These factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. Courts also consider several habeas-specific factors: whether the petitioner is a flight risk, whether the petitioner will pose a threat to the public upon release, and the State's interest in rehabilitation and maintaining custody pending appeal. *Id.* at 777.

Having concluded Horner is entitled to the writ, the Court now considers whether these factors are enough to overcome the "presumption" that Horner should be released. *See id.* at 774. The Court considers the relevant factors in turn.

### A. The Likelihood of Success on Appeal

Where a state can show that it has a "strong likelihood of success on appeal," or even can establish a "substantial case on the merits," this factor can weigh in favor of granting a stay. *Id.* at 778. "Where the State's showing on the merits falls below this level, the preference for release should control." *Id.*

The State has not shown it has a strong likelihood of succeeding on appeal nor has it made a substantial case on the merits. The State identifies three primary reasons it is likely to prevail on appeal: (1) the Court's use of *Patton* was unprecedented and debatable, (2) the Court's procedural-default analyses misapprehended Maryland's postconviction law, and (3) the Court's *Brady* analyses did not address the postconviction court's factual findings. (Mot. Stay at 5–8.) Having reviewed the State's arguments underlying each of these three contentions, the Court does not discern any arguments that were not already addressed in the Court's prior opinion. For the reasons stated in that opinion, the Court does not believe these contentions have merit.

The Court does, however, note the State's overarching point: states are generally well-positioned when appealing a district court's issuance of a writ of habeas corpus because district courts must apply a highly deferential standard to state-court rulings, and appellate courts then review a district court's conclusions, including the application of that deference, *de novo*. (*Id.* at 4–5.) But any structural advantage the State has is limited by the fact that the Court granted the writ here for two independent reasons. Accordingly, for the State to prevail on appeal, the appellate court will have to reverse this Court on two different grounds. This diminishes the State's ability to establish a "substantial case on the merits." *See Franklin v. Duncan*, 891 F. Supp. 516, 520 (N.D. Cal. 1995) (concluding the state could not establish a "substantial case on the merits" even though it had a "plausible appellate position" on one ground because the state lacked plausible appellate positions on the other grounds on which the court granted relief).

For these reasons, the Court concludes this factor weighs against granting a stay. Where a state cannot make the requisite showing with respect to this factor, "the preference for release should control." *Hilton*, 481 U.S. at 778. The Court still considers the remaining factors in the stay analysis, but it notes the importance of this factor in its eventual decision.

### B. *Irreparable Harm to the State*

The Court discerns two arguments from the State as to why it will be irreparably harmed if the judgement is not stayed: (1) Horner is a flight risk, so if he is released and flees, the State's ability to preserve his conviction or obtain a new conviction would be irreparably harmed,[5] and (2) if the judgment is not stayed, the State may not be able to resolve its appeal before a retrial is completed, which would render its appeal moot. (Mot. Stay at 9–10, 13.)

---

[5] The State did not address flight risk in its discussion of irreparable harm (and instead addressed it as a separate factor), but because many courts consider it relevant to the irreparable harm analysis, the Court will discuss it here. *See, e.g.*, *Boyles v. Weber*, Civ. No. LLP-04-4134, 2007 WL 2684872, at *2 (D.S.D. Sept. 7, 2007).

With respect to the State's first argument, there is no reliable evidence before the Court that Horner poses a flight risk. The only evidence the State offers to support its position is Richard Shaffer's statement from fifteen years ago that while Horner was in jail pending trial, Horner told Shaffer that he would abscond to Mexico if he were to obtain pretrial release. (*Id.* at 13 (citing Sentencing Tr. at 26, ECF No. 160.)) Shaffer's testimony has changed numerous times during the course of this case, and Shaffer at one point stated in a sworn affidavit that he manufactured incriminating information about Horner in order to obtain a lighter sentence in his own case. (*See* ECF No. 51.) Because the State offers no evidence beyond Shaffer's problematic testimony, there is not a sufficient basis on which to conclude Horner poses a flight risk.

The Court agrees, however, that it is possible (though not necessarily likely) that retrial proceedings could be completed before the State's appeal is resolved. It also recognizes that the State has an interest in maintaining custody pending appeal. In general, a state's interest in maintaining custody "will be strongest where the remaining portion of the [petitioner's] sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. Here, Horner has served approximately fourteen years of a life sentence. The State, therefore, has a strong interest in maintaining custody.

Accordingly, even though there is not enough evidence to find that Horner is a flight risk, the Court concludes this factor weighs in favor of granting a stay. The weight that the Court gives this factor is limited, however, by the Court's conclusion that the State has not made a substantial case on the merits.

### C. Substantial Injury to Horner

"The interest of the habeas petitioner in release pending appeal [is] always substantial . . ." *Hilton*, 481 U.S. at 777. This holds true here; Horner has served almost fourteen years on a

10

conviction with at least two underlying constitutional violations. He would be substantially injured if the judgment is stayed.

### D. The Public Interest

The State contends that granting a stay is in the public interest because if Horner is released, he poses a danger to the public, particularly his former wife, LaRaine Smith. (Mot. Stay at 11–13.) There is not, however, sufficient reliable evidence in the record to support this conclusion. First, several of the State's arguments with respect to this factor rely on the testimony of Shaffer and Smith. (*Id.*) As explained in the Court's prior opinion, these witnesses have changed their testimony numerous times in recent years and have alternatively recanted and un-recanted their testimony. (*See* Mem. Op. 24–26, 30–37.) The Court declines to rely on their testimony in deciding whether Horner poses a danger to the public or to Smith. For similar reasons, the Court will not rely on Horner's conviction for attempted murder: because his conviction was based largely on the testimony of Shaffer and Smith—and no physical or forensic evidence tied Horner to the attempted murder—the Court does not deem his conviction a reliable metric of his dangerousness.

The Court is also not convinced that Horner's prior two convictions for assault establish that he is a present danger. According to the State, these convictions occurred in the early 1990s and were in "unrelated cases," which the Court assumes means they did not involve Smith. (Mot. Stay at 11; Sentencing Tr. at 30.) Given the age of these convictions (almost 30 years) and the lack of involvement of Smith, the Court does not believe they are reliable indicators that Horner poses a present danger to her or to other members of the public.

The Court takes the State's assertions about the history of domestic violence in Horner and Smith's marriage very seriously. (Mot. Stay at 12.) Indeed, law enforcement has corroborated

11

Smith's accounts of domestic violence in the marriage. (*See* ECF No. 43-8 at 13.) But even if incidents of domestic violence did occur years ago, such incidents do not necessarily bar a petitioner from being released. *See Franklin*, 891 F. Supp. at 522 (explaining that testimony that petitioner had abused his family members more than 20 years earlier was not a good indicator of petitioner's present dangerousness).

In short, the relevant inquiry requires the Court to consider whether Horner poses a present danger to the public if released, not whether he posed a danger to the public in the past. *See Hilton*, 481 U.S. at 777. Here, the State does not allege that Horner has made any threats to Smith during the fourteen years he has been in prison, or that he has committed any acts of violence during the time he has been incarcerated.[6] Absent such evidence, there is not a sufficient basis on which the Court can conclude that Horner poses a present danger to his wife or other members of the public.

Therefore, this factor weighs against a stay. If the State elects to retry Horner, a state court will of course be free at a bail hearing to revisit the question of whether Horner should be released, and if so, whether certain conditions of release are appropriate to ensure Smith's safety.

In sum, the first, third, and fourth factors weigh against a stay, and the second factor weighs in favor of a stay. After weighing the relative importance of each factor, and the "presumption" that a successful habeas petitioner should be released pending appeal, *Hilton*, 481 U.S. at 774, the Court concludes a stay is not warranted and it will deny the State's motion.

### III. *Motion for Automatic Substitution of Public-Officer Respondent*

---

[6] The State does contend that Horner attempted "before and after being arrested on the attempted-murder charge . . . to steal [Smith's] laptop, swipe her login credentials, access her email, and surveil her communications." (Mot. Stay at 12.) The State argues this conduct revealed Horner's intent to maintain "access and influence over [Smith] even while he was in prison." (*Id.*) Even if the underlying factual contentions are true, the Court is not convinced that Horner's conduct at the time of his arrest is proof that he presently poses a danger to Smith.

The State asserts that in the time since the filing of Horner's second amended petition, responsibility for the facility in which Horner resides has shifted from Warden Bobby P. Shearin to Acting Warden Jeffrey Nines. (Mot. Substitute at 1.) The State has moved to substitute the primary respondent in this case from Warden Shearin to Acting Warden Nines and to reform the case caption accordingly. (*Id.* at 1–2.) *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (explaining that in a traditional habeas case, "the proper respondent is the warden of the facility where the prisoner is being held"). Horner does not oppose the motion. (ECF No. 157.) The Court will grant the motion.

## IV. *Conclusion*

For the foregoing reasons, an Order shall enter denying the State's motion to alter or amend the judgment, granting the motion to include Horner's sentencing transcript, denying the motion to stay, and granting the motion to substitute the public officer respondent.

DATED this 9th day of April, 2020.

BY THE COURT:

/s/
James K. Bredar
Chief Judge